RUTHERFORD v DEPARTMENT OF SOCIAL SERVICES

Docket No. 118342. Submitted June 18, 1991, at Detroit. Decided
December 18, 1991; approved for publication March 25, 1992, at
9:00 A.M. Leave to appeal sought.

The Department of Social Services, following an administrative
hearing in which a referee concluded that Dr. John W. Ruther-
ford had failed to document numerous claims for services in
1980 and 1981 for which he received payment pursuant to the
medicaid    program,    ordered    Dr.    Rutherford    to    refund
$73,205.06. Dr. Rutherford petitioned for review in the Oakland
Circuit Court, John N. O'Brien, J., which held that the depart-
ment had jurisdiction to seek the refund, but reduced the
amount of the refund to $10,672.68, as supported by an audited
sample, holding that the department could not use statistical
extrapolation to determine the amount of the refund because it
had not promulgated an agency rule incorporating the method
of calculation. The department appealed, and Rutherford cross
appealed.

The Court of Appeals *held:*

1. The fact that the petitioner had terminated his enrollment
in the medicaid program before the department commenced the
refund proceedings did not deprive the department of jurisdic-
tion to bring the refund proceedings.

2. The hearing referee properly placed the burden of proving
entitlement to the medicaid payments on the petitioner.

3. Because the petitioner failed to object at the administra-
tive hearing to the use of the extrapolation method of deter-
mining the refund, that issue was not properly before the
circuit court. Even if the question had been preserved, the
failure of the department to promulgate an administrative rule
incorporating the extrapolation method does not preclude the
use of that method as evidence of overpayment. Accordingly,
the circuit court erred in reducing the amount of the repay-
ment.

4. The petitioner failed to preserve the question whether the

REFERENCES

Am Jur 2d, Welfare Laws §§ 38-40, 93.

See the Index to Annotations under Medicaid; Overpayment; Proba-
bilities and Statistics; Recovery Back; Reimbursement.

manual issued to practitioners should have been promulgated as a rule. In any event, the petitioner signed a provider agreement in which he agreed to be bound by the provisions set forth in the manual.

5. The decision by the department was based on competent, material, and substantial evidence on the whole record.

Affirmed in part, reversed in part, and remanded for entry of an order affirming the department's decision in all respects.

1. SOCIAL SERVICES — MEDICAID — OVERPAYMENTS — JURISDICTION.

The Department of Social Services has jurisdiction to seek recovery of medicaid overpayments made to a provider of medical services even though the provider already has terminated enrollment in the medicaid program (MCL 400.111a[7][d]; MSA 16.490[21a][7][d]).

2. SOCIAL SERVICES — MEDICAID — OVERPAYMENTS — EVIDENCE.

The Department of Social Services need not provide an administrative rule incorporating the statistical extrapolation method of determining overpayments received by a provider of medical services to medicaid recipients in order to use the results of the application of that method as evidence of overpayment.

*Roger H. Leemis,* for the petitioner.

*Frank J. Kelley,* Attorney General, *Gay Secor Hardy,* Solicitor General, and *Erica W. Marsden,* Assistant Attorney General, for the respondent.

Before: MARILYN KELLY, P.J., and WAHLS and SHEPHERD, JJ.

PER CURIAM. This is a medicaid overpayment case between petitioner, a physician who provided services under the medicaid program, and the Michigan Department of Social Services. In 1987, following an administrative hearing, the referee found that petitioner had failed to document numerous claims for payment of services funded by medicaid during 1980 and 1981. The referee concluded that petitioner frequently ordered tests when there was no medical necessity. Based on the

referee's recommendation, DSS ordered petitioner to refund $73,205.06.

On appeal to the circuit court, petitioner challenged the method DSS had used to compute the overpayments. Dss had applied a statistical random-sampling extrapolation formula. It had reviewed a sampling of petitioner's medicaid claims made over two years, determined the percentage of overcharges and applied that percentage to the total claims paid during the period. The circuit court held that DSS was precluded from using such a technique unless it first promulgated an agency rule. However, it affirmed the agency's findings as to the overpayment on the randomly selected sample. The effect of the ruling was to reduce the DSS recovery from $73,205.06 to $10,672.68.

Dss appeals from the circuit court decision, asserting that the statistical method of random sampling was used only to provide evidence of the overpayment. For that reason, it need not have been promulgated in the form of a rule.

Petitioner cross appeals. He argues that DSS lacked jurisdiction over him and that the hearing referee improperly allocated the burden of proof. He urges that DSS is required to promulgate the provisions of its practitioners manual in a rule and that its decision was not supported by competent, material and substantial evidence. We hold that the circuit court erred in reducing the amount of the overpayment and affirm the DSS decision.

The threshold question is whether DSS had jurisdiction over petitioner, being that he resigned from the medicaid program before DSS notified him that it sought recovery of overpayments. Section 111a of the Social Welfare Act authorizes the director of DSS to "[r]ecover payments to a provider in excess of the reimbursement to which the provider is entitled." MCL 400.111a(7)(d); MSA

16.490(21a)(7)(d). Section 105 defines a "provider" as an individual, sole proprietorship, corporation or any other legal entity "who has entered into an agreement of enrollment" in the medicaid program. MCL 400.105(4); MSA 16.490(15)(4).

In addition, the practitioners manual provides that a claimant continues to be subject to the conditions of the program for six years from the last date of service for which a claim is made. By virtue of the fact that petitioner enrolled in the medicaid program and agreed to the policies delineated in the practitioners manual upon enrolling, DSS obtained jurisdiction over him. Though he resigned in 1985, he remained subject to the provisions of the program in 1987 for claims made before his resignation.

Petitioner contends that the hearing referee should not have placed the burden on him to prove that he was entitled to be compensated for his claims. Rather, he contends, the burden should have been on DSS to show that it erroneously paid him and was entitled to recoupment. Petitioner's argument was squarely rejected by this Court recently in *Prechel v Dep't of Social Services,* 186 Mich App 547, 549; 465 NW2d 337 (1990):

> The extrapolation process used by the DSS creates a rebuttable presumption placing the burden on the physician to demonstrate that the department's calculations are inaccurate. At all times the burden is on the physician to prove entitlement to welfare monies. *Illinois Physicians Union v Miller,* 675 F2d 151, 154 (CA 7, 1982). . . . Considering the legislative scheme underlying the joint federal-state medicaid program as announced in *Miller,* we find that the hearing referee did not err in placing the burden of proof on petitioner to establish his entitlement to payment.

We next address the issue of whether the circuit

court erred in holding that DSS could not use the random-sampling extrapolation method without first promulgating a rule sanctioning it. Petitioner neglected to object to use of the technique in the administrative hearing. His failure to do so precluded consideration of the issue both by the circuit court and by us. *Ackerberg v Grant Community Hosp,* 138 Mich App 295, 299; 360 NW2d 599 (1984).

Even had the issue been properly preserved, we are persuaded by DSS's argument that the information derived from application of the extrapolation formula was used merely as evidence of overpayment. Therefore, no administrative rule was necessary. As established in *Prechel, supra,* use of the extrapolation method provides valid evidence of overpayment which, like all other evidence, may be rebutted by the physician. See also *Tomlin v Dep't of Social Services,* 154 Mich App 675, 690-691; 398 NW2d 490 (1986); *Quality Clinical Laboratories, Inc v Dep't of Social Services,* 141 Mich App 597, 601; 367 NW2d 390 (1985).

Petitioner was given ample notice that DSS would use the extrapolation process to calculate the overpayment. He was specifically informed that he was entitled to present evidence challenging its accuracy. Dss is not required to promulgate a rule for each type of evidence it chooses to admit at an administrative hearing. See MCL 24.275; MSA 3.560(175). Accordingly, the circuit court erred in reducing the amount of money that DSS is entitled to recoup. Also see MCL 24.207(j); MSA 3.560(107)(j); *Hinderer v Dep't of Social Services,* 95 Mich App 716; 291 NW2d 672 (1980).

Petitioner's remaining issues also lack merit. He claims on appeal that he was not bound by the provisions of the practitioners manual concerning reimbursement, because its provisions had not

been promulgated in a rule. However, since the issue of rule promulgation was not raised at the administrative level, we are precluded from granting relief on it. *Ackerberg, supra.* In addition, when petitioner signed a provider agreement in 1972, he committed himself to follow the provisions of the practitioners manual. A state agency may bind an individual through a contract without regard to whether the contents of the contract were promulgated as a rule. *Greenfield Construction Co, Inc v Highway Dep't,* 402 Mich 172, 191; 261 NW2d 718 (1978). We further note that many of the challenged provisions of the manual simply reiterate standard medical practice.

Lastly, petitioner argues briefly that his testimony at the administrative hearing supported the money claims he had submitted. After reviewing the record, we are convinced that the agency decision was based on competent, material and substantial evidence on the whole record. MCL 24.306(1)(d); MSA 3.560(206)(1)(d); *Felton v Dep't of Social Services,* 161 Mich App 690, 694-695; 411 NW2d 829 (1987).

The circuit court decision is affirmed in part and reversed in part. We remand for entry of an order affirming the DSS decision in all respects.